**James Douglas ZINK, Petitioner,**

v.

**W. J. ESTELLE, Jr., Director Texas Department of Corrections, Respondent.**

**Civ. A. No. 74–G–157.**

United States District Court, S. D. Texas, Galveston Division.

Oct. 30, 1975.

Ted Redington, Staff Counsel for Inmates, Huntsville, Tex., for petitioner.

John L. Hill, Atty. Gen. of Texas, Larry F. York, First Asst. Atty. Gen., Houston, Tex., for respondent.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Petitioner was convicted of the offense of murder with malice in the 10th

Judicial District Court of Galveston County, Texas, in Cause No. 31,615, after a plea of not guilty and a trial by jury. A sentence of life imprisonment was imposed. As far as can be ascertained from the record, the state trial court made no determination of petitioner's competency to stand trial.

In his application for writ of habeas corpus, petitioner Zink contends (1) that *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), required the state trial court to conduct *sua sponte* an inquiry into his competency to stand trial; (2) that even if the state trial court was not required under the facts of this case to conduct a *sua sponte* inquiry into Zink's competency to stand trial, Zink is now entitled to a *nunc pro tunc* determination of whether he was in fact incompetent to stand trial in 1973; and (3) that the state trial court's denial of an application for a continuance so that additional psychiatric examinations could be made rendered it impossible for his counsel to provide effective assistance.

These same allegations have been presented to the state courts in habeas corpus proceedings. By written order of June 25, 1974, the 10th Judicial District Court of Galveston County, Texas denied petitioner's application for writ of habeas corpus without holding an evidentiary hearing. The Texas Court of Criminal Appeals then denied petitioner's application without written order on July 17, 1974.

Petitioner's first allegation is based on the twin holdings of the Supreme Court in *Pate v. Robinson* that (1) the states must provide a procedure constitutionally adequate to protect a defendant's right not to be tried while legally incompetent, and (2) the failure of the state courts to follow such a procedure, once provided, deprives the defendant of his due process right to a fair trial. *Pate v. Robinson,* 383 U.S. at 385, 86 S. Ct. 836; *see also, Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

■ The Texas Court of Criminal Appeals responded to *Pate v. Robinson* by holding in *Townsend v. Texas,* 427 S.W.2d 55, 63 (Tex.Crim.App.1968) that:

> [i]f the trial judge learns from personal observations, or facts known to him, or from evidence presented, or by motion of the accused or his counsel, or by affidavit, or from any reasonable claim or credible source that there is a bona fide doubt as to the accused's condition to comprehend his situation or make his defense, a duty devolves upon the trial judge to cause a sanity hearing on that issue
> . . . .

In *Wages v. Texas,* 501 S.W.2d 105, 107 (1973) the Court of Criminal Appeals made clear " . . . that even where no request for a separate competency hearing is made there must be such hearing if evidence of the accused's present incompetency becomes sufficiently manifest during the trial." *See also, Ainsworth v. Texas,* 493 S.W.2d 517 (Tex.Crim.App.1973); *Perryman v. Texas,* 494 S.W.2d 542 (Tex.Crim.Ap. 1973); *Price v. Texas,* 496 S.W.2d 103, 105 (Tex.Crim.App.1973). This procedure was fashioned from the Illinois procedure that the Supreme Court expressly approved in *Pate v. Robinson, supra,* and therefore is clearly constitutionally adequate.

■ In the instant case, however, the state habeas courts failed to apply the standard laid down by the Texas Court of Criminal Appeals in *Townsend.* The state district court denied petitioner's application for writ of habeas corpus by written order of June 25, 1974, finding "that no suggestion of incompetency was filed prior to trial and that no request was made before or during the trial to hear evidence thereon." Thus, the state court apparently ignored the possibility that a *sua sponte* competency hearing might have been required under the rule of *Townsend.* Whether the circumstances were such as to necessitate a *sua sponte* competency hearing at Zink's trial in 1973 is a factual issue that can-

not be resolved by an examination of the state court records. An evidentiary hearing must, therefore, be held to develop the relevant facts.

■ If it is determined at the evidentiary hearing that a *sua sponte* competency hearing was required, a second determination must then be made as to whether it is feasible to determine *nunc pro tunc* whether Zink was in fact incompetent to stand trial in 1973. If it is not, Zink must be re-tried within a reasonable time by the State of Texas or released from custody. If, on the other hand, it is possible to determine *nunc pro tunc* Zink's competency in 1973, then the evidentiary hearing should include a development of the facts necessary to resolve that issue. *See, Lee v. Alabama,* 386 F.2d 97, 108 (5th Cir. 1967); *Carroll v. Beto,* 421 F.2d 1065 (5th Cir. 1970).

■ Even if it is determined that the state trial judge was not under a duty under the rule of *Townsend v. Texas* to conduct a *sua sponte* competency hearing at the time of Zink's trial in 1973, Zink is nevertheless entitled to a *nunc pro tunc* determination of whether he was in fact incompetent to stand trial, if the facts elicited at the hearing are sufficient to create a real, substantial and legitimate doubt as to his competency to stand trial. *See, Nathaniel v. Estelle,* 493 F.2d 794 (5th Cir. 1974). This related issue, therefore, must also be factually developed and resolved at the evidentiary hearing.

■ The state court records also provide an inadequate basis for this Court to resolve the final issue raised by petitioner concerning whether the state trial court's denial of an application for a continuance for time to conduct an additional psychiatric examination deprived Zink of his federal right to the effective assistance of counsel. *See Hintz v. Beto,* 379 F.2d 937 (5th Cir. 1967); *Tyler v. Beto,* 391 F.2d 993 (5th Cir. 1968); *U. S. v. Edwards,* 488 F.2d 1154 (5th Cir. 1974). Hence, this issue must also be heard and resolved.

■ Having determined that an evidentiary hearing must be held to resolve the factual issues specified above, the only remaining question is whether the hearing should more appropriately be held in State or Federal Court. This Court deems it appropriate, in the interest of federal-state comity, to afford the state habeas court the opportunity to hold the hearing required in this matter.

■ Comity was defined in *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 609 (1971) as:

. . . a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

Comity, as applied in the context of review by the federal courts of state court convictions, implies that the primary responsibility for correcting constitutional errors that vitiate state convictions should be left with the state courts. See *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Moreover, state courts are better equipped to process such complaints than federal courts, particularly where, as in the case *sub judice,* the principal constitutional infirmity in dispute stems from an alleged failure to observe a standard of state law. *See Wells v. Stallings,* 253 F.Supp. 748, 751 (E.D.N.C.1966).

This application of the concept of comity is not without precedent. In *Tyler v. Croom,* 264 F.Supp. 415 (E.D.N.C.1967) and in *Neal v. Taylor,* 264 F.Supp. 418 (E.D.N.C.1967), the court abstained from exercising its habeas jurisdiction to allow the state courts an opportunity to hold an evidentiary hearing even though state remedies had technically been exhausted. The Third Circuit in *U. S. v. Meyers,* 384 F.2d 279, 284 (1967) expressly approved this procedure. *See also, Berry v. Beto,* 410 F.2d

503 (5th Cir. 1969); *Thompson v. MacDougall*, 272 F.Supp. 313 (S.C. 1967). This Court concludes in accordance with *Tyler v. Croom,* that when the issues raised by a federal application for a writ of habeas corpus necessitate an evidentiary hearing and no hearing has been held on those issues in state court, an abstention from the exercise of its federal habeas jurisdiction in order to give the state courts an opportunity to hold a hearing is a proper exercise of self-restraint in furtherance of federal-state comity.

Now, therefore, it is ORDERED that both parties seek a prompt hearing in the courts of the State of Texas consistent with this Memorandum and Order. If the state courts decline to afford petitioner an evidentiary hearing within 120 days of the date of this Order, the Court will entertain a motion on behalf of petitioner for further consideration and relief by this Court. Said motion shall specify the efforts made by the petitioner to have a hearing held in state court and the progress, if any, of the proceedings in state court.

This cause shall be retained on this Court's docket.